IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2013

## KENNETH COLEMAN BENEFIEL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henry County**
**No. 14678    Donald E. Parish, Judge**

_____

**No. W2012-01010-CCA-R3-PC  - Filed June 25, 2013**

_____

The Petitioner, Kenneth Coleman Benefiel, appeals the Henry County Circuit Court's denial of post-conviction relief from his guilty plea to soliciting sexual exploitation of a minor by electronic means, a Class B felony.  See T.C.A. § 39-13-529(a), (e)(1).  On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was entered unknowingly and involuntarily.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Shon D. Johnson, Paris, Tennessee, for the Petitioner-Appellant, Kenneth Coleman Benefiel.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Hansel Jay McCadams, District Attorney General; and Scott A. Rich, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner was indicted by a Henry County Grand Jury for one count of soliciting sexual exploitation of a minor by electronic means.  On September 15, 2010, pursuant to the terms of his plea agreement, the Petitioner entered a guilty plea to the charged offense in exchange for a sentence of eight years as a Range I, standard offender, with 240 days to be served in confinement and the balance of the sentence to be served on supervised probation.  He received a $1,000.00 fine and was required to register as a sex offender.  At the time of his plea, the Petitioner had 153 days of jail credit.

**Guilty Plea Hearing.** At the September 15, 2010 plea submission hearing, the Petitioner testified that he was entering his guilty plea voluntarily, he was not under the influence of alcohol or drugs, he understood the terms of his negotiated plea agreement, he had not been threatened or coerced into entering his guilty plea, and he had fully discussed his decision to plead guilty with trial counsel. He stated that he understood his guilty plea would create a criminal record which could be used to enhance his punishment for any later violations of the law. When the trial court asked if he had any questions about his plea agreement, the Petitioner responded that he had no questions, that he wanted to plead guilty, and that he had been able to adequately discuss his case with trial counsel.

The court informed the Petitioner of his rights and the rights he was giving up by entering a guilty plea, the consequences of entering a guilty plea, and the sentencing range for the offense. It also informed the Petitioner that his negotiated sentence was eight years, told him that he had earned 153 days of jail credit, and explained that he would be required to register as a sex offender.

Then the State summarized the proof supporting the Petitioner's guilty plea:

> Had this case proceeded to trial the State would show that on or about April the 11th 2010, in Henry County, the [Petitioner] sent text messages by his cell phone to a twelve[-]year[-]old girl here in Henry County asking her to take pictures of herself and [to] send them to him.

The Petitioner acknowledged that he committed the aforementioned act and that he was pleading guilty to the charged offense. At the conclusion of the plea submission hearing, the trial court accepted his guilty plea and sentenced him in accordance with the plea agreement after determining that the Petitioner had freely and voluntarily entered his plea. Then the court cautioned him: "Sir, eight (8) years is a very long time to be on probation, to have people watching where you go, where you live, what you do. Literally, the keys to the jail . . . are in your hands."

The Petitioner was subsequently released to probation. Conditions of the Petitioner's probation were that he was prohibited from using an electronic device for a sexually oriented purpose, that he was required to have written permission from his probation officer for internet access, that he was required to consent to the search of any electronic device that he possessed, and that he was required to attend sex offender treatment. On April 13, 2011, a probation violation warrant was issued stating that the Petitioner had been observed viewing internet pornography on a laptop computer in his vehicle outside his workplace on March 17, 2011, that he had been accessing the internet with this computer without his probation officer's permission, that he had failed to report this computer to his probation officer, and

that he had failed to attend the Sex Offender Treatment Program. On May 11, 2011, the Petitioner admitted that he had violated the terms of his probation. On June 9, 2011, the trial court entered an order revoking the Petitioner's probation and ordering him to serve the balance of his eight-year sentence in the Tennessee Department of Correction. The Petitioner did not appeal the revocation of his probation or the resulting sentence.

On August 30, 2011, the Petitioner filed a timely pro se petition for post-conviction relief, alleging that he had received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. The Petitioner was subsequently appointed counsel, who filed an amended petition on the Petitioner's behalf alleging that trial counsel failed to: (1) inform him of the possible alternative sentences, (2) inform him of the elements of the charged offense, (3) investigate whether the facts of his case met the elements of the charged offense, (4) to meet with him for any substantial length of time for the purpose of engaging him in assisting with the preparation of his defense, (5) investigate whether he was charged with the appropriate offense or whether other, lesser offenses were more applicable to his case, (6) explain the consequences of entering his guilty plea, (7) investigate whether he suffered from a mental condition that prevented him from understanding the elements of the charged offense, sentencing, and the consequences of entering a guilty plea to the charged offense, (8) inform the Petitioner of the factual and legal aspects of his case, which resulted in him being induced to enter his guilty plea to the charged offense, and (9) explain the specific and special conditions of his probation upon entering his guilty plea. The post-conviction court conducted an evidentiary hearing on April 12, 2012.

**Post-Conviction Hearing.** At the post-conviction hearing, the Petitioner entered the following exhibits into evidence: his Request for Acceptance of Plea of Guilty; his judgment of conviction; the contents of the State's discovery file, which included information regarding his probation revocation; and the transcript from his plea submission hearing. Significantly, no photographs or texts related to the Petitioner's conviction were admitted. The record indicates that although post-conviction counsel requested the relevant photographs in Petitioner' case, they were unable to be found by the State.

Trial counsel testified that he was appointed to represent the Petitioner on April 20, 2010, and that he met with the Petitioner that day. He detailed their first meeting:

> I advised [the Petitioner] of what he was charged with. I went through the warrant with him, explained to him what he was facing as far as the type of felony it was, the time that it carried. I explained to him that between that day and when it was reset . . . that I would meet with the DA's office, and with the investigators, and find[] out . . . what I could about the case, and at the next

[meeting] I would have more information, and we would have more stuff to talk about.

Trial counsel said that he met with the Petitioner four times after their initial meeting on April 20, 2010.

On April 27, 2010, trial counsel met with the prosecutor and the investigator assigned to the Petitioner's case. During this meeting, trial counsel was able to examine the State's evidence, which included the Petitioner's cell phone and the victim's cell phone, text messages between the Petitioner's phone and the victim's phone, and photographs of the victim that the victim had sent from her cell phone to the Petitioner's cell phone. Trial counsel remembered seeing two photographs of the victim but knew that there was at least one photograph of the victim in her "bra and panties."

At the meeting with the Petitioner on April 27, 2010, trial counsel told the Petitioner about the photographs and explained the nature of the charges. He also told the Petitioner that the State had made him an offer of eight years, with one year to be served in confinement and the balance of the sentence to be served on supervised probation, in exchange for a guilty plea to the charged offense, and he discussed the details of the offer with him. When asked by Petitioner's post-conviction counsel if he explained the elements of the charged offense to the Petitioner, trial counsel stated:

Not, probably not per se. I did not read the statute to him [but told him] that what they had charged him with was that he was an adult. This girl was twelve years old at the time, that they had conversation[s], and that he had enticed her. The State was alleging that he had gotten her to send dirty pictures to him.

When post-conviction counsel asked trial counsel to state the elements of the charged offense from memory, trial counsel stated: "In essence, that he's an adult, that she's a minor, he being an adult entices or induces [her] to send patently offensive, or sexual conduct, or simulated sexual conduct on the phone that's viewed by the defendant."

During the April 27, 2010 meeting, trial counsel told the Petitioner that proceeding to trial and being found not guilty of the charged offense was "the only way that he was going to get less time than what . . . the State had offered[.]" Trial counsel also mentioned the possibility of the Petitioner being convicted at trial of one of the lesser included offenses of the charged offense but did not identify the specific lesser included offenses, their elements, or their penalties because he was unsure of what they were at the time. He added, "I told him that . . . if he went to trial they would find him guilty of something, some other

-4-

charge, and I explained to him that we called that 'lesser included [offenses],' but I never went into what those lesser included's were."

Trial counsel stated that at the April 27, 2010 meeting, he talked to the Petitioner about all of the State's evidence and the State's offer. He said he did not discuss possible defenses with the Petitioner because the Petitioner decided to accept the State's offer at the April 27 meeting. Trial counsel said he talked to the Petitioner about the possibility of proceeding to trial and being found not guilty, although he stated that he did not specifically call this a defense.

When post-conviction counsel asked him if he ever told the Petitioner that the offer of eight years was the best deal he was going to get, trial counsel stated:

> The offer that was made to him was, the original offer was a[n] eight (8) year split with one (1) year of incarceration. The balance would be on probation. I explained to him at that point in time . . . that that offer was locked in as far as the State. It would not be any worse. I explained to him that I would keep working with the DA's office to see if that [offer] could, in fact, be [made more favorable to him], which, in fact, prior to him pleading on September the 15th . . . I was able to convince the DA's office to [reduce the time in confinement] from a year to two hundred and forty (240) days, which [would mean that the Petitioner would serve only] six (6) months [in] incarceration.

Trial counsel acknowledged telling the Petitioner that the eight year sentence with 240 days in confinement was the best deal he was going to receive.

Trial counsel said that the victim "was never completely undressed" in the photographs the State had obtained. However, he believed these photographs met the definition of "sexual activity" in Code section 39-17-1002(8)(C), which states: "Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks or breasts in an act of apparent sexual stimulation or sexual abuse[.]" Trial counsel asserted that whether the photographs met the definition of "sexual activity" under the statute was a jury question. However, he said, "It was my determination, after seeing the photographs and viewing the statute, that the photographs did [meet the definition of "sexual activity"] under [subsection] eight (8) [of Tennessee Code Annotated section 39-17-1002 and that] the State had a reasonable case at that point." He stated that whether the photographs met the definition of "sexual activity" was "something that we would be fighting at trial if that is where we went." Trial counsel said he did not read Code section 39-17-1002(8)(C) to the Petitioner.

Although trial counsel admitted that he did not show the photographs of the victim to the Petitioner, he said that when he informed the Petitioner of the existence of the photographs, the Petitioner never asked to see the photographs and never requested to see them at any later point during the representation. In addition, trial counsel said that although he had requested hard copies of these photographs, the State had never disclosed these photographs to him in discovery. Trial counsel felt the photographs did not depict a sex act but were patently offensive: "To me as far as sexual conduct or sexual nature, they were patently offensive. . . . I explained . . . to [the Petitioner] that if he went to trial . . . [we] would have to argue those matters, but I felt like it was probably fairly close." When asked if he thought that the photographs were fairly close to being "patently offensive" or to being "sexual activity," trial counsel replied that he felt the photographs were fairly close to being "[p]atently offensive." When post-conviction counsel asked him if one of the elements of the offense required that the State prove that the photographs were "patently offensive" or depicted "sexual activity," trial counsel stated that the requirement that the photographs were "patently offensive" was one of the "sub-topics" of "simulated sexual activity[.]"

Trial counsel stated that he did not do any research on whether the photographs in this case constituted a depiction of sexual activity; however, he stated that based on his interpretation of the charged offense, "the photographs met the requirement of the statute[.]" He said that he had reviewed the statute regarding the elements of the charged offense at the time he received the warrant in the Petitioner's case but did not recall looking up the statute defining "sexual activity" in the statute.

Trial counsel acknowledged that he never talked to the Petitioner about the fact that the police narrative failed to mention the existence of these photographs. He said the officer's narrative stated that there had been texts between the Petitioner and the victim and that the Petitioner had requested the victim to take photographs of herself undressed. Trial counsel acknowledged that texts, without the photographs, would not have met the elements of the charged offense but asserted that he had seen the photographs of the victim that were a part of the State's evidence. He believed that the photographs never became part of the record in this case because the Petitioner never had a preliminary hearing or trial.

On cross-examination, trial counsel said he and the Petitioner "didn't have any problem communicating." At their April 27, 2010 meeting, he explained the State's offer and answered the few questions asked by the Petitioner. Trial counsel said the Petitioner never exhibited any signs that made him question the Petitioner's competency and that he routinely filed "for forensics in Circuit [Court] if [he had] a question about someone's competency."

Trial counsel said he had practiced law in Henry County for the last thirty years and had an understanding of community standards in the county, and that based on this knowledge and experience, he fully explained the State's offer to the Petitioner. Trial counsel said that after looking at the statute for the charged offense and the photographs, he told the Petitioner that "[he] felt like if the jury thought that [the Petitioner] had actually induced those . . . that conversation[s] and those photographs [to] be sent, and if the State proved that he saw those photographs[,] and he was involved," then the Petitioner likely would be found guilty.

Trial counsel stated that he met with the Petitioner in jail on three separate occasions and that the Petitioner never mentioned a possible defense and never demanded to see the photographs, even though trial counsel had informed him of their existence. Trial counsel stated that the Petitioner "never told me anything about a defense as far as–he never denied doing what they alleged that he did."

The week before the Petitioner entered his plea, trial counsel again explained the plea agreement to him and said that "[t]here was never any indication that [the Petitioner] didn't" understand the charge to which he was entering a guilty plea. He told the Petitioner that he would be subject to the Sex Offender Registry and specified "some [of the] burdensome living restrictions" such as where he could live, who he could be with, and his need to obtain permission prior to leaving his residence for more than forty-eight hours. He asked the Petitioner if he had any questions, but the Petitioner never asked him anything.

Trial counsel said that he would have been able to access the photographs in this case during the time period leading up to entry of the guilty plea if the photographs had become an issue. He said that it was not unusual occurrence for him not to have hard copies of the photographs in cases where they were sent electronically. Moreover, he said he did not have hard copies of the photographs in this case because the Petitioner never asked to see the photographs after trial counsel described them to him and because "[t]here was never any indication with [the Petitioner] that there was going to be anything other than a plea." Trial counsel said that if the Petitioner had requested to see the photographs, the investigator could have shown them to him in the courtroom.

On re-direct examination, trial counsel admitted that he never informed the Petitioner of the fact that the multiple texts from the victim could have been a defense in his case. Post-conviction counsel then asked trial counsel why he had not discussed the lesser included offense of Exploitation of a Minor, as provided in Tennessee Code Annotated section 39-17-1003:

-7-

Q.      . . . If [the Petitioner] possessed, in your mind, if he possessed photographs that . . . depicted sexual activity[,] why didn't you ever discuss with him the offense of, Sexual Exploitation of a Minor, which would have been a D Felony instead of [a] B Felony" Are you familiar with that statute?

A.      Yes, it's included in that statute under number (b) if I'm not mistaken.

Q.      Well, actually it is not.  It is in subsection (a)[.]

A.      Okay.

Q.      And it says "it is unlawful for any person to knowingly possess material that contains a minor engag[ing] in sexual activity or simulated [sexual] activity that is patently offensive[,"] and that is exactly what you just said a few moments ago is what you felt it was, but you never told him that that would have been [a] D Felony–this charge would have been [a] D Felony instead of a B Felony.

A.      [Counsel], as I stated before, I explained to [the Petitioner] that what the State–what the State had him charged with[,] that I felt like it was a jury question.  I explained to him at that point in time if he went to trial that if he was found not guilty he would walk away and if the jury found him guilty of something less then he would–then it could be something less, but as far [as] specifically going into it, no sir, I didn't.

Q.      I understand, but my point is since you didn't specifically tell him that he could have been charged and found guilty of [a] D Felony instead of a B Felony he lost that right to even make that decision, didn't he?  I think he would have to, right, since he didn't even get told that he could make the decision?

A.      He was told that there were–that he could be found [guilty] of something lesser but–

Q.      Of the lesser offenses.

A.      And I didn't specifically address that section, no.

Q.      That's right.

A.      I did not.

Q.      So he lost an opportunity to even decide whether he even wanted to go to trial on that charge or not.  Isn't that true?

A.      That's not what he was charged with.

Q.      I understand, but the very term that you said on your legal basis of what you found that he potentially could be found guilty [of] is exactly the wording of another statute and a lower level felony, but the defendant was never even told about this.

A.      No, sir.

Q.     And in all your years you have had many sexual offense cases, so you were aware of the statute. I think you just said that you were aware of the statute, but you failed to tell him about it.
A.     Yes, sir.

In response to questioning from the court, trial counsel stated that he had been with the public defender's office since 1987 and had handled 1800 cases last year, including 50 to 100 cases involving sex offenses or violations of the sex offender registry. He stated that if the Petitioner had been convicted of the charged offense at trial, he likely would have received a sentence of between eight and twelve years because he did not have a criminal record. He said he informed the Petitioner that if the court sentenced him as a Range I, standard offender to eight years then he would probably serve two years and four months in confinement as compared to 240 days in confinement, of which the Petitioner would serve only 180 days, pursuant to the plea agreement. Trial counsel stated that he believed the Petitioner actually served only 180 days in this case and acknowledged that the Petitioner filed his post-conviction petition only after he was ordered to serve the balance of his sentence in the Tennessee Department of Correction when his probation was revoked.

The Petitioner testified that trial counsel never discussed possible defenses to the charged offense and never explained the elements of the charged offense. He also asserted that trial counsel never informed him of the potential lesser included offenses of which he could be convicted at trial. Moreover, the Petitioner claimed that trial counsel never told him about the existence of the photographs of the victim and never showed him these photographs. The Petitioner claimed that the first time a photograph was mentioned to him was during the preparation of his post-conviction case. He asserted that his post-conviction attorney first learned of the existence of photographs in this case the previous day. The Petitioner stated that although his post-conviction attorney asked the State for the photographs related to his case, the photographs were never produced.

The Petitioner said that trial counsel told him the best deal he was going to receive from the State was to enter a guilty plea to the charged offense in exchange for an eight-year sentence. He also said that counsel had not informed him of the lesser included offense of Sexual Exploitation of a Minor, a Class D felony. He claimed that if he had known of any defenses or had been informed of any lesser included offenses, he would not have entered his guilty plea. In addition, he stated that trial counsel never discussed the definition of the term "sexual activity" in the charged statute and claimed that if he had been told the definition of this term at the time, he never would have entered his guilty plea. The Petitioner also stated that trial counsel never informed him of the texts between him and the victim and never told him that these texts could be a defense. The Petitioner claimed that he entered his guilty plea based on the trial counsel's failure to properly advise him.

On cross-examination, the Petitioner stated that he graduated from high school in the special education program and that he could read and write. He acknowledged that trial counsel told him the range of punishment for the charged offense was eight to thirty years in confinement. Although the Petitioner initially testified that he told trial counsel he was innocent, he later testified that he never told trial counsel that the police had arrested him in error, that the cell phone had not belonged to him, or that someone else had gotten his cell phone and texted the victim. When the State asked why he never raised an objection during the plea submission hearing, the Petitioner responded: "I think I was under the influence, sir. Strike that. I was told that that was the best deal that I could get, and there was no reason to go to trial, and there was no reason for anything." He acknowledged telling the trial court at his plea submission hearing that he "understood everything that was being told to [him]" and that he was not acting under duress in entering his guilty plea. When the State asked him if he was lying then or lying now, the Petitioner stated, "I'm saying that [trial counsel] did not tell me anything except for the fact [that] I was only charged with a Class B Felony, and that was the best deal I could get, and so if that was the only thing I could get[,] that's what I pleaded to." He admitted telling the trial court that he committed the charged offense at the plea submission hearing. Although the Petitioner acknowledged that it would have been reasonable to let trial counsel know of any defenses at the time he was told of the State's offer, he claimed he failed to do so because he "was scared" and believed at the time that trial counsel was looking out for his best interests.

On re-direct examination, the Petitioner stated that after entering his guilty plea, he was diagnosed with a mental illness, for which he was prescribed medication that he was currently taking. The Petitioner stated that trial counsel never requested a mental examination regarding his competency and never inquired about his mental condition. He stated that despite the State's claim that he never asserted his innocence, he said he initially entered a plea of not guilty in this case but changed his plea to guilty after being advised by trial counsel to do so.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On April 16, 2012, the court entered an order denying post-conviction relief, wherein he made the following factual findings and legal conclusions:

a. The guilty plea was voluntary, knowing and was not unlawfully induced.

b. Trial counsel adequately informed the Petitioner of the elements of the charged offense and the sentencing alternatives so as to allow the Petitioner to make an informed decision whether to plead guilty. The credible proof indicates that trial counsel advised the Petitioner as to the possibility that certain lesser included offense(s) existed of which

-10-

the Petitioner might be convicted at trial. However, trial counsel did not advise the Petitioner as to the elements of any potential lesser included offense(s). Trial counsel was not required to do so in order to provide effective representation. See generally: [Michael David] Overall v. State, [No. 88-215-III, 1988 WL 138228 (Tenn. Crim. App., at Nashville, Dec. 28, 1988]; State v. [James] McKinnon, [No. W2004-02714-CCA-R3-PC, 2005 WL 3533335 (Tenn. Crim. App. Dec. 27, 2005)]; [Sisavanh] Keomongkout v. State, [No. M2011-00317-CCA-R3-PC, 2011 WL 6743287 (Tenn. Crim. App. Dec. 21, 2011)].

c.   Trial counsel met with the Petitioner sufficiently to allow the Petitioner to explain his position and any possible defenses to the charges.

d.   Trial counsel conducted an adequate investigation of the charges, given the nature of the information provided by the Petitioner.

e.   Trial counsel adequately explained the punitive consequences of the plea of guilty to the Petitioner.

f.   Trial counsel had no basis to believe that the Petitioner suffered from a mental condition or disability that prohibited the Petitioner from a reasonable understanding of his guilty plea.

g.   Trial counsel adequately informed the Petitioner of his options to go to trial or to accept the negotiated plea agreement.

h.   Trial counsel adequately explained the conditions of probation which would be imposed on the Petitioner.

In denying post-conviction relief, the court concluded: "[T]he Petitioner has failed to show by clear and convincing evidence that his guilty plea was entered into without a reasonable understanding of its consequences or that his guilty plea was unlawfully induced or unknowing or that his trial counsel was deficient or that his decision to plead guilty was based upon any deficient performance by his counsel." The Petitioner filed a timely notice of appeal on May 10, 2012.

**ANALYSIS**

The Petitioner argues that trial counsel provided ineffective assistance of counsel by misunderstanding and failing to explain the elements of the charged offense, failing to inform him of the lesser included offenses of the charged offense, failing to research the applicable law prior to advising him, and failing to inform him of the possible defenses to his charge when advising him whether to proceed to trial or to enter a guilty plea. He claims that trial counsel's deficiencies fell below the objective standard of reasonableness and prejudiced him by undermining his decision to plead guilty. In addition, the Petitioner argues that his plea

-11-

was not knowingly and voluntarily entered because counsel's ineffective assistance prevented him from making an intelligent decision regarding his alternate courses of action.

In response, the State contends that, after reviewing the evidence and the Petitioner's argument in his brief, the Petitioner does not claim that his guilty plea failed to meet the state and federal constitutional standards but instead asserts that his plea was unknowing and involuntary because he received ineffective assistance of trial counsel. The State argues that the Petitioner is not entitled to post-conviction relief because he has failed to prove that but for trial counsel's alleged deficient performance, he would have rejected the State's offer and would have proceeded to trial. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation

-12-

encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to

an intentional abandonment of a known right." 553 S.W.2d at 340 (internal quotation marks omitted).

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include the following:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

First, the Petitioner argues that trial counsel failed to adequately inform him of the elements of the charged offense, which prevented him from making an informed decision as to whether to plead guilty. He claims that trial counsel failed to explain the elements of the offense and that trial counsel misunderstood the elements, as shown by his misstatement of the elements at the post-conviction hearing. The Petitioner asserts that trial counsel, relying on his own misunderstanding of the elements of the charged offense, erred in advising him whether to accept the offer from the State.

The Petitioner was charged with and pled guilty to violating Tennessee Code Annotated section 39-13-529(a), which at the time of his offense provided:

> It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or Internet service, including webcam communications, directly or through another, to intentionally command, hire, persuade, induce or cause a minor to engage in sexual activity or simulated sexual activity that is patently offensive, as defined in § 39-17-1002, where such sexual activity or simulated sexual activity is observed by that person or by another.

-14-

T.C.A. § 39-13-529(a) (Supp. 2009).  A violation of Code section 39-13-529(a) is a Class B felony.  Id. § 39-13-529(e)(1) (Supp. 2009).  Tennessee Code Annotated section 39-17-1002 defined "sexual activity" as "any of the following acts":

(A) Vaginal, anal or oral intercourse, whether done with another person or an animal;

(B) Masturbation, whether done alone or with another human or an animal;

(C) Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks or breasts in an act of apparent sexual stimulation or sexual abuse;

(D) Sadomasochistic abuse, including flagellation, torture, physical restraint, domination or subordination by or upon a person for the purpose of sexual gratification of any person;

(E) The insertion of any part of a person's body or of any object into another person's anus or vagina, except when done as part of a recognized medical procedure by a licensed professional;

(F) Patently offensive, as determined by contemporary community standards, conduct, representations, depictions or descriptions of excretory functions; or

(G) Lascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person.

Id. § 39-17-1002(8) (Supp. 2009).  In addition, this section defined "patently offensive" as "that which goes substantially beyond customary limits of candor in describing or representing such matters[.]"  Id. § 39-17-1002(4) (Supp. 2009).

At the post-conviction hearing, when asked by post-conviction counsel if he explained the elements of the charged offense to the Petitioner, trial counsel stated:

Not, probably not per se.  I did not read the statute to him [but told him] that what they had charged him with was that he was an adult.  This girl was twelve years old at the time, that they had conversation[s], and that he had enticed her.  The State was alleging that he had gotten her to send dirty pictures to him.

When post-conviction counsel asked trial counsel to state the elements of the charged offense from memory, trial counsel replied:  "In essence, that he's an adult, that she's a minor, he being an adult entices or induces [her] to send patently offensive, or sexual conduct, or simulated sexual conduct on the phone that's viewed by the defendant."

-15-

In the order denying post-conviction relief, the court held, "Trial counsel adequately informed the Petitioner of the elements of the charged offense and the sentencing alternatives so as to allow the Petitioner to make an informed decision whether to plead guilty." In reaching this conclusion, the post-conviction court implicitly accredited counsel's testimony over the Petitioner's testimony. We conclude that the record fully supports the post-conviction court's finding regarding this issue. Trial counsel testified that he met with the Petitioner several times, discussed the elements of the charged offense with him, and explained that he would be facing a sentence of between eight and thirty years if he proceeded to trial. After viewing the photographs and the texts between the Petitioner and the victim that were in the State's possession, trial counsel advised the Petitioner of the possibility that a jury would convict him of the charged offense. He also explained that if the Petitioner was convicted of the charged offense, the trial court would likely sentence him to more time in confinement than the time he received pursuant to the offer from the State. Despite the Petitioner's claims that trial counsel misunderstood the elements of the offense, we conclude that trial counsel's testimony from the post-conviction hearing shows that he understood the elements of the charged offense and properly advised the Petitioner of these elements and how they applied to the facts of his case prior to the Petitioner deciding to plead guilty. Moreover, we cannot ignore the procedural history of this case, which shows that the Petitioner filed his post-conviction petition after he was ordered to serve the balance of his sentence in the Tennessee Department of Correction when his probation was revoked. Upon review, the Petitioner has failed to show that trial counsel was deficient in failing to inform him of the elements of the charged offense or that but for counsel's alleged deficiencies, he would not have entered his guilty plea and would have proceeded to trial.

Second, the Petitioner contends that trial counsel failed to inform him of the applicable lesser included offenses for the charged offense. He asserts that although trial counsel told him of the possibility of being found guilty of lesser included offenses at trial, he failed to inform him of the specific lesser included offenses for the charged offense and their penalties. Additionally, he notes that the post-conviction court relied on two cases, State v. James McKinnon, No. W2004-02714-CCA-R3-PC, 2005 WL 3533335 (Tenn. Crim. App. Dec. 27, 2005), and Sisavanh Keomongkout v. State, No. M2011-00317-CCA-R3-PC, 2011 WL 6743287 (Tenn. Crim. App. Dec. 21, 2011), to support its holding that trial counsel had no duty to inform the Petitioner of the specific lesser included offenses but claims that the court's reliance on these cases is misplaced because neither James McKinnon nor Sisavanh Keomongkout excuse trial counsel from advising a defendant regarding applicable lesser included offenses.

Regarding this issue, the post-conviction court held that trial counsel did not provide ineffective assistance of counsel:

-16-

The credible proof indicates that trial counsel advised the Petitioner as to the possibility that certain lesser included offense(s) existed of which the Petitioner might be convicted at trial. However, trial counsel did not advise the Petitioner as to the elements of any potential lesser included offense(s). Trial counsel was not required to do so in order to provide effective representation. See generally: [Michael David] Overall v. State, [No. 88-215-III, 1988 WL 138228 (Tenn. Crim. App., at Nashville, Dec. 28, 1988]; State v. [James] McKinnon, [No. W2004-02714-CCA-R3-PC, 2005 WL 3533335 (Tenn. Crim. App. Dec. 27, 2005)]; [Sisavanh] Keomongkout v. State, [No. M2011-00317-CCA-R3-PC, 2011 WL 6743287 (Tenn. Crim. App. Dec. 21, 2011)].

The record supports the findings of the post-conviction court. As the post-conviction court aptly noted at the close of the evidentiary hearing, the applicable lesser included offenses may not be known to trial counsel until after all the proof has been presented at trial and just before the jury is instructed. Although we agree with the Petitioner that neither James McKinnon nor Sisavanh Keomongkout explicitly excuses trial counsel from advising a defendant about the applicable lesser included offenses, we have found no legal authority requiring trial counsel, under the facts in this case, to advise a defendant of the applicable lesser included offenses and their elements prior to entering a guilty plea. See Michael David Overall, 1988 WL 138228, at *3 (concluding that even though trial counsel informed the defendant of the lesser included offenses of first degree murder prior to him entering a guilty plea to first degree murder in exchange for a sentence of life imprisonment, he was not required to do so given the overwhelming evidence of the defendant's guilt and the absence of any mitigating circumstances to assert at a sentencing hearing).

Significantly, the Petitioner made the decision to enter his guilty plea to the charged offense at his second meeting with trial counsel and only seven days after counsel was appointed. Trial counsel testified that the Petitioner never asserted his innocence, never asked to see the photographs of the victim, and never indicated that he wanted to do anything other than plead guilty. At the plea submission hearing, the Petitioner stated that he had committed the charged offense and had made the decision to enter his guilty plea after thoroughly discussing his case with trial counsel. Trial counsel testified that the only offer he received from the State was for the Petitioner to plead guilty to the charged offense in exchange for an eight-year sentence, with 240 days in confinement. He informed the Petitioner that if he proceeded to trial, he could be convicted of a lesser included offense. However, he also informed him that based on his evaluation of the State's proof, including the photographs, there was a possibility that he would be convicted of the charged offense at trial and would likely be sentenced by the trial court to a sentence in excess of the sentence he would receive pursuant to the State's offer. Upon review, the Petitioner has failed to

show that trial counsel was deficient in failing to inform him of the applicable lesser included offenses or that but for counsel's alleged deficiency, he would have refused to enter his guilty plea and would have proceeded to trial.

Third, the Petitioner argues that trial counsel failed to research the applicable law on the charged offense prior to rendering advice to him. Specifically, he claims that trial counsel failed conduct adequate research to determine whether the photographs in this case depicted "sexual activity" under the charged offense.

Here, the post-conviction court held that "[t]rial counsel conducted an adequate investigation of the charges, given the nature of the information provided by the Petitioner." We conclude that the record supports this finding. At the post-conviction hearing, trial counsel testified that he had thirty years of experience practicing law in Henry County and had been with the public defender's office since 1987. After examining the texts between the Petitioner and the victim as well as the photographs, he determined, based on his experience and familiarity of the community standards in the area, that a Henry County jury might reasonably conclude that the photographs met the definition of "sexual activity" in Code section 39-17-1002(8)(C). Upon review, the Petitioner has failed to show that trial counsel was deficient in failing to research the applicable law or that but for counsel's alleged deficiency, he would have refused to enter his guilty plea and would have proceeded to trial.

Fourth, the Petitioner contends that trial counsel failed to inform him of the possible defenses to his charge when advising him of whether to proceed to trial or to enter a guilty plea. He claims that trial counsel failed to discuss possible defenses with him and never considered negotiating a plea agreement to other offenses that carried a lesser punishment, such as the offense of Sexual Exploitation of a Minor, a Class D Felony, as outlined in Tennessee Code Annotated section 39-17-1003.

Regarding this issue, the post-conviction court held that "[t]rial counsel met with the Petitioner sufficiently to allow the Petitioner to explain his position and any possible defenses to the charges" and that "[t]rial counsel adequately informed the Petitioner of his options to go to trial or to accept the negotiated plea agreement." We conclude that the record supports these findings.

Initially, we note that a defense attorney "should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable." Baxter, 523 S.W.2d at 932-33. In addition, "[c]ounsel should discuss fully potential strategies and tactical choices with his client." Id. at 933. Here, trial counsel testified that he met with the Petitioner the day he was appointed and four more times in a

five-month period. Trial counsel evaluated the photographs and the texts based on his extensive legal experience and informed the Petitioner of the possibility that a Henry County jury would convict him of the charged offense. He also informed him that if conviction, he would likely be sentenced to a sentence in confinement in excess of the sentence he would receive under the State's offer. Despite the Petitioner's claims to the contrary, the record indicates that trial counsel discussed the possibility of being convicted of a lesser included offense at trial and gave the Petitioner adequate time to present any defenses he had to the State's evidence. Trial counsel testified that during the entirety of the representation, the Petitioner never asserted his innocence, never asked to see the photographs or the texts between him and the victim, and only indicated his desire to enter a guilty plea. Specifically, trial counsel stated that the Petitioner "never told [him] anything about a defense [and] never denied doing what they alleged that he did." The Petitioner has failed to show that trial counsel was deficient in failing to inform him of possible defenses or that but for this alleged deficiency, he would have refused to entered his guilty plea and would have insisted on going to trial.

## CONCLUSION

Upon review, we conclude that the Petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary or unknowing. The judgment of the post-conviction court is affirmed.


_____
CAMILLE R. McMULLEN, JUDGE